1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiffs*

[Additional counsel on signature page]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL DE LA TORRE and JOSHUA OGDEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GNC HOLDINGS, INC., GENERAL NUTRITION CORPORATION, GENERAL NUTRITION CENTERS, INC.,<br><br>        Defendants. | **CLASS ACTION AND REPRESENTATIVE ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Paul de la Torre and Joshua Ogden ("Plaintiffs"), through their undersigned

attorneys, bring this lawsuit against GNC Holdings, Inc., General Nutrition Corporation, and

General Nutrition Centers, Inc. (hereinafter "GNC" or "Defendants") as to their own acts upon

personal knowledge, and as to all other matters upon information and belief.  In order to remedy the

harm arising from Defendants' illegal conduct, which has resulted in unjust profits, Plaintiffs bring

this action on behalf of California consumers specifically defined herein, who purchased either:

(a)  GNC "Herbal Plus" Gingko Biloba

(b) GNC "Herbal Plus" St. John's Wort
(c) GNC "Herbal Plus" Ginseng
(d) GNC "Herbal Plus" Echinacea

## **INTRODUCTION**

1.     On February 2, 2015, New York Attorney General Eric T. Schneiderman sent a demand letter to GNC Holdings, Inc.'s CEO Michael G. Archbold, ordering GNC to immediately cease and desist engaging in the sale of adulterated and mislabeled herbal dietary supplements. These products included various GNC "Herbal Plus" supplements, including GNC "Herbal Plus" Gingko Biloba, GNC "Herbal Plus" St. John's Wort, GNC "Herbal Plus" Ginseng, and GNC "Herbal Plus" Echinacea ("the Misbranded GNC "Herbal Plus" Products") that either could not be verified to contain the labeled substance, or which were found to contain ingredients not listed on the labels.

2.     Attorney General Schneiderman requested that GNC provide detailed information relating to the production, processing and testing of herbal supplements sold at their stores, as well as set forth a thorough explanation of quality control measures in place.

3.     The Attorney General's letter expressly warned Defendants that, "contamination, substitution and falsely labeling herbal products constitute deceptive business practices and, more importantly, present considerable health risks for consumers."  (Exhibit 1, Attorney General Letter to GNC).

4.     The letter came as DNA testing, performed as part of an ongoing investigation by the Attorney General's Office, revealed that all of the products purchased by Plaintiffs in this cause tested negative for the ingredient listed on the front of the package.

5.     An expert in DNA barcoding technology, Dr. James A. Schulte II of Clarkson University in Potsdam, N.Y., was hired by the Attorney General's office to perform the testing.

6.      DNA barcodes are short genetic markers in an organism's DNA and are used to identify it as belonging to a particular species. Barcodes provide an unbiased, reproducible method of species identification. Barcodes can be used to determine the exact plant species being tested.

7.      All of the Misbranded GNC "Herbal Plus" Products tested negative for the advertised package contents. In reality, they contained garlic, rice, pine or material originating from the daisy or buttercup families, and *none* of the gingko biloba, St. John's wort, ginseng, or echinacea claimed on the products' labels.

8.      Plaintiffs relied on Defendants' representations that the Misbranded GNC "Herbal Plus" Products were what they purported to be: supplements containing gingko biloba, St. John's wort, ginseng, or echinacea.  Plaintiffs did not purchase Defendants' supplement to ingest garlic, rice or material originating from the daisy family.

9.      Studies conducted by the Centre for Biodiversity Genomics at the University of Guelph and others have previously alerted the dietary supplement industry to the fact that it is not providing the public with authentic products without substitution, contamination or fillers.

10.     According to Attorney General Schneiderman:

 "this investigation makes one thing abundantly clear: the old adage 'buyer beware' may be especially true for consumers of herbal supplements," "The DNA test results seem to confirm long-standing questions about the herbal supplement industry. Mislabeling, contamination, and false advertising are illegal. They also pose unacceptable risks to New York families—especially those with allergies to hidden ingredients. At the end of the day, American corporations must step up to the plate and ensure that their customers are getting what they pay for, especially when it involves promises of good health."

11.     According to Arthur P. Grollman, M.D., Professor of Pharmacological Sciences at Stony Brook University, "this study undertaken by Attorney General Schneiderman's office is a well-controlled, scientifically-based documentation of the outrageous degree of adulteration in the herbal supplement industry."

12.     Using DNA barcoding technology to examine the contents of herbal supplements, the Attorney General focused on what appears to be Defendants' practice of substituting contaminants and fillers in the place of authentic product.

13.     The testing revealed that all of the retailers were selling a large percentage of supplements for which modern DNA barcode technology could not detect the labeled botanical substance.

14.     If the producers of herbal supplements fail to identify all the ingredients on a product's label, a consumer with food allergies, or who is taking medication for an unrelated illness, is taking a potentially serious health risk every time a contaminated herbal supplement is ingested.

15.     Plaintiffs did not purchase Defendants' supplements to assume these risks and would not have purchased Defendants' products if they had known they were contaminated and potentially dangerous.

16.     The Misbranded GNC "Herbal Plus" Products were and are worthless as a matter of law, failing to contain any of the advertised ingredients.  A full return of the purchase price is warranted for the purchase of these supplements.

## PARTIES

17.     Plaintiff Paul de la Torre is a resident of Los Gatos, California, who purchased Defendants' misbranded and adulterated products in California during the four (4) years prior to the filing of this Complaint (the "Class Period"). Specifically, Mr. de la Torre purchased the following of Defendants' misbranded and adulterated products: GNC "Herbal Plus" Gingko Biloba, GNC "Herbal Plus" St. John's Wort, GNC "Herbal Plus" Ginseng, and GNC "Herbal Plus" Echinacea.

18.     Plaintiff Joshua Ogden is a resident of San Jose, California, who purchased Defendants' misbranded and adulterated products in California during the Class Period. Specifically, Mr. Ogden purchased the following of Defendants' misbranded and adulterated products:  GNC "Herbal Plus" Gingko Biloba, GNC "Herbal Plus" St. John's Wort, GNC "Herbal Plus" Ginseng, and GNC "Herbal Plus" Echinacea.

19.     Defendant General Nutrition Centers, Inc. is a Pennsylvania Corporation operating in California with a principal place of business at 300 Sixth Ave., Pittsburgh, PA 15222. Defendant General Nutrition Corporation, doing business as GNC, is a Pennsylvania Corporation operating in California with a principal place of business at 300 Sixth Ave., Pittsburgh, PA 15222. Defendant GNC Holdings, Inc. is a Pennsylvania Corporation operating in California with a principal place of business at 300 Sixth Ave., Pittsburgh, PA 15222.

20.     California law applies to all claims set forth in this Complaint because Plaintiffs live in California and purchased Defendants' products here.   Also, Defendants sell products in California.  The misconduct alleged herein was implemented in California and has a shared nexus with California.  The formulation and execution of the unlawful practices alleged herein occurred in, or emanated from, California.   Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiffs and all Class members.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

22.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

23.     The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

24.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

25.     The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to do business in California, have sufficient minimum contacts with California, and otherwise intentionally avail themselves of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendants, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## **FACTUAL ALLEGATIONS**

27.     Plaintiffs Paul de la Torre and Joshua Ogden regularly purchased GNC "Herbal Plus" Gingko Biloba, GNC "Herbal Plus" St. John's Wort, GNC "Herbal Plus" Ginseng and GNC "Herbal Plus" Echinacea products during the past four years.

28.     In so doing, Plaintiffs reasonably relied on the labels of the Misbranded GNC "Herbal Plus" Products. That is, when Plaintiffs purchased, for example, GNC "Herbal Plus" Gingko Biloba, they believed they were purchasing a product containing nothing but gingko biloba.

29.     In reality, however, recent testing has revealed that Defendants' herbal supplements are not what they purport to be.

30.     Specifically, GNC "Herbal Plus" Gingko Biloba contains no gingko biloba, but instead contains oryza (rice) and/or allium (garlic), among other substances; GNC "Herbal Plus" St. John's Wort product contains no St. John's Wort, but instead contains oryza, allium, and/or dracaena (a tropical house plant); GNC "Herbal Plus" Ginseng contains no ginseng, but instead contains, among other substances, oryza, dracaena, and/or pinus strobus (white pines); and GNC "Herbal Plus" Echinacea contains no echinacea, but instead contains pine and/or ranunculaceae (flowering plans from the buttercup family), or no plant substances at all .

31.     In other words, while Defendants purport to sell their customers herbal supplements, the supplements are a sham, containing none of the active ingredient promised in the product's name and on the label.

32.     The adulterated and misbranded GNC "Herbal Plus" Products are worthless.

33.     A reasonable purchaser would believe that Defendants' products did in fact contain the ingredients listed on the labels.

34.      A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" Gingko Biloba actually contained gingko biloba.

35.      A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" St. John's Wort actually contained St. John's wort.

36.      A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" Ginseng actually contained ginseng.

37.     A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" Echinacea actually contained echinacea.

38.     Plaintiffs reasonably relied on Defendants' package labeling of its Misbranded GNC "Herbal Plus" Products.

39.     At point of sale, Plaintiffs did not know, and had no reason to know, that Defendants'

Misbranded GNC "Herbal Plus" Products were misbranded and adulterated as set forth herein. Plaintiffs would not have bought the Misbranded GNC "Herbal Plus" Products had they known the truth that the products contained none of the ingredients listed on the front of package label.

40.     As a result of Defendants' misrepresentations of content, Plaintiffs and thousands of others in California purchased the products at issue.

41.     Defendants' labeling as alleged herein is false and misleading and designed to increase sales of the products at issue.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following classes:

> **California Class**: All persons in the state of California who, within the last four years, purchased any of Defendants' GNC "Herbal Plus" products including:
>
> (a)     GNC "Herbal Plus" Gingko Biloba
> (b)     GNC "Herbal Plus" St. John's Wort
> (c)     GNC "Herbal Plus" Ginseng
> (d)     GNC "Herbal Plus" Echinacea

43.     The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

44.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

45.     <u>Numerosity</u>:  Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

46.     <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only

individual Class members.  Thus, proof of a common set of facts will establish the right of each

Class member to recover.  Questions of law and fact common to each Class member include, for

example:

a.  Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded GNC "Herbal Plus" Products sold to consumers;

b.  Whether the Misbranded GNC "Herbal Plus" Products are worthless;

c.  Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

d.  Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

e.  Whether Defendants were unjustly enriched by its deceptive practices.

47.     <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs

bought Defendants' Misbranded GNC "Herbal Plus" Products during the Class Period.

Defendants' unlawful, unfair, and/or fraudulent actions concern the same business practices

described herein irrespective of where they occurred or were experienced.  Plaintiffs and the Class

sustained similar injuries arising out of Defendants' conduct in violation of California law.  The

injuries of each member of the Class were caused directly by Defendants' wrongful conduct.  In

addition, the factual underpinning of Defendants' misconduct is common to all Class members and

represents a common thread of misconduct resulting in injury to all members of the Class.

Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of

the Class members and are based on the same legal theories.

48.     <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Class.

Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to

the interests of the Class members.  Plaintiffs have retained highly competent and experienced class

action attorneys to represent their interests and those of the members of the Class.  Plaintiffs and

Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this

class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class

members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

49. <u>Superiority</u>:   There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

50. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to FED. R. CIV. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

51. The prerequisites to maintaining a class action pursuant to FED. R. CIV. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

52. Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

53.     For each of the nine cause of actions herein alleged *infra*, Plaintiffs hereby reallege and incorporate the foregoing paragraphs.

**FIRST CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**<u>Unlawful Business Acts and Practices</u>**

54.     Defendants' business practices as described herein are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

55.     Plaintiffs and the Class were injured as a result of Defendants' unlawful acts and practices.

56.     Defendants sold to Plaintiffs and the Class products that were not capable of being sold legally, and which have no economic value.

57.     Plaintiffs and the Class paid for worthless products they otherwise would not have bought.

58.     As a result of Defendants' unlawful business practices, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class member any money paid for the Misbranded GNC "Herbal Plus" Products.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**<u>Unfair Business Acts and Practices</u>**

59.     Defendants' conduct as set forth herein constitutes unfair business acts and practices.

60.     As set forth above, Defendants engaged in deceptive marketing, advertising, packaging, and labeling of the Misbranded GNC "Herbal Plus" Products

61.     Plaintiffs and the Class were injured as a result of Defendants' unfair acts and practices.

62.     Defendants sold to Plaintiffs and the Class products that were not capable of being legally sold and that have no economic value.

63.     Plaintiffs and the Class who purchased the Misbranded GNC "Herbal Plus" Products had no way of reasonably knowing that the products were misbranded and were not properly labeled, and thus could not have reasonably avoided injury.

64.     A reasonable consumer would have relied on Defendants' representations.

65.     The consequences of Defendants' conduct outweigh any justification, motive or reason therefor.

66.     As a result of Defendants' conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for the Misbranded GNC "Herbal Plus" Products.

### THIRD CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**Fraudulent Business Acts and Practices**

67.     Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code § 17200, *et seq.*

68.     Defendants' misleading packaging and labeling of the Misbranded GNC "Herbal Plus" Products were likely to deceive reasonable consumers.

69.     As set forth above, Plaintiffs and members of the Class were deceived.

70.     As set forth above, Defendants engaged in fraudulent business acts and practices.

71.     Plaintiffs and the Class were injured by Defendants' fraudulent acts and practices.

72.     Defendants' fraud and deception caused Plaintiffs and the Class to purchase Misbranded GNC "Herbal Plus" Products that they would otherwise not have purchased had they known the true nature of these products.

73.     As a result of Defendants' conduct as set forth herein, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for the Misbranded GNC "Herbal Plus" Products by Plaintiffs and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500,** *et seq.*
<u>**Misleading and Deceptive Advertising**</u>

74.     Plaintiffs asserts this cause of action for violations of California Business and Professions Code § 17500*, et seq.* for misleading and deceptive advertising against Defendant.

75.     As set forth above, Defendants engaged in a scheme of offering Misbranded GNC "Herbal Plus" Products for sale to Plaintiffs and members of the Class by way of product labeling.

76.     As set forth above, these materials misrepresented and/or omitted the true contents and nature of Misbranded GNC "Herbal Plus" Products.

77.     Defendants' labeling inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product labeling was intended as inducements to purchase Misbranded GNC "Herbal Plus" Products  and are statements disseminated by Defendants to Plaintiffs and the Class that were intended to reach members of the Class.

78.     Defendants knew, or in the exercise of reasonable care, should have known, that these statements were misleading and deceptive as set forth herein.

79.     Defendants prepared and distributed within California via product labeling statements that misleadingly and deceptively represented the composition and nature of Misbranded GNC "Herbal Plus" Products.

80.     Plaintiffs and the Class were the intended targets of such representations.

81.     Plaintiffs and the Class reasonably relied on Defendants' representations.

82.     Defendants' conduct in disseminating misleading and deceptive statements in California was and is likely to deceive reasonable consumers by obscuring the true composition and nature of Misbranded GNC "Herbal Plus" Products, in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

83.     Plaintiffs and the Class were injured as a result of Defendants' acts and practices.

84.     As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class.

85.     Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants; ill-gotten gains and restore any money paid for Misbranded GNC "Herbal Plus" Products by Plaintiffs and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Untrue Advertising</u>**

86.     Plaintiffs assert this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

87.     Defendants offered their Misbranded GNC "Herbal Plus" Products for sale to Plaintiffs and the Class by way of labeling.

88.     As set forth above, these materials misrepresented or omitted the true contents and nature of the Misbranded GNC "Herbal Plus" Products.

89.     Defendants' labeling inducements were made in California and come within the definition of advertising contained in Business and Professions Code §17500, *et seq.* where the product labels are intended as inducements to purchase the Misbranded GNC "Herbal Plus" Products, and are statements disseminated by Defendants to Plaintiffs and the Class.

90.     Defendants knew, or in the exercise of reasonable care, should have known, that these statements were untrue and/or misleading.

91.     As set forth above, Defendants prepared and distributed in California via product packaging and labeling, statements that falsely advertise the composition of the Misbranded GNC "Herbal Plus" Products, and falsely misrepresented the nature of the Misbranded GNC "Herbal Plus" Product.

92.     Plaintiffs and the Class were the intended targets of such representations.

93.     Defendants' conduct in disseminating untrue label advertising throughout California deceived Plaintiffs and members of the Class by obfuscating the contents, nature and quality of the Misbranded GNC "Herbal Plus" Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

94.     Plaintiffs and the Class reasonably relied on Defendants' representations.

95.     As set forth herein, a reasonable consumer would have relied on Defendants' representations.

96.     Plaintiffs and the Class were injured as a result of Defendants' acts and practices.

97.     As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class.

98.     Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Misbranded GNC "Herbal Plus" Products by Plaintiffs and the Class.

**SIXTH CAUSE OF ACTION**
**Consumer Legal Remedies Act, Cal. Civ. Code §1750, _et seq._**

99.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

100.    Defendants sold Misbranded GNC "Herbal Plus" Products in California during the Class Period.

101.    Plaintiffs and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

102.    Misbranded GNC "Herbal Plus" Products are "goods" within the meaning of Cal. Civ. Code §1761(a).

103.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5), of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

104.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it misrepresents the particular standard, quality or grade of the goods.

105.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair

methods of competition and unfair or fraudulent acts or practices in that it advertises goods with the intent not to sell the goods as advertised.

106.    By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it represents that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

107.    Plaintiffs and the Class were injured as a result of Defendants' acts and practices.

108.    Plaintiffs request that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).

109.    If Defendants are not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm.

110.    In this Complaint, Plaintiffs are not seeking damages pursuant to the CLRA. Plaintiffs will amend this complaint to request damages, after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

111.    Implied in the purchase of Misbranded GNC "Herbal Plus" Products by Plaintiffs and the Class is the warranty that the purchased products are legal and can be lawfully resold.

112.    Defendants knowingly and intentionally misbranded and adulterated the Misbranded GNC "Herbal Plus" Products.

113.    Defendants knew or should have known that those Misbranded GNC "Herbal Plus" Products were illegal.

114.    When Defendants sold those products they impliedly warranted that the products were legal and could be lawfully resold.

115.    Plaintiffs would not have knowingly purchased products that were illegal and unsellable and which subjected Plaintiffs to criminal prosecution.

116.    No reasonable consumer would knowingly purchase products that are illegal and unsellable and subject a consumer to criminal prosecution.

117.    The purchased Misbranded GNC "Herbal Plus" Products were unfit for the ordinary purpose for which Plaintiffs and the Class purchased them.

118.    In fact, these Misbranded GNC "Herbal Plus" Products were economically worthless.

119.    As a result, Plaintiffs and the Class were injured through their purchase of an unsuitable, useless, illegal, and unsellable product.

120.    By reason of the foregoing, Plaintiffs and the Class were damaged in the amount they paid for Misbranded GNC "Herbal Plus" Products.

### EIGHTH CAUSE OF ACTION
### Breach of Express Warranty

121.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

122..   Defendants provided Plaintiffs and other members of the Class with written express warranties, including warranties that its Misbranded GNCs "Herbal Plus" Products contained gingko biloba, St. John's wort, ginseng, or echinacea.

123.    Defendants breached these warranties by providing Misbranded GNCs "Herbal Plus" Products to Plaintiffs and members of the Class that contained no such ingredients and did not otherwise conform to Defendants' warranties.

124.     These breaches resulted in damages to Plaintiffs and other members of the Class who bought Misbranded GNCs "Herbal Plus" Products but did not receive the good as warranted.

125.     As a proximate cause of Defendants' breaches of warranties, Plaintiffs and the other Class members have suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**Unjust Enrichment**

126.     Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

127.     As a result of Defendants' unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiffs and the Class through the payment of the purchase price for the Misbranded GNCs "Herbal Plus" Products.

128.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the Class.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury of their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendants as follows:

A.     For an order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.     For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiffs and the Class for all causes of action;

C.     For an order requiring Defendants to immediately cease and desist from selling their Misbranded GNC "Herbal Plus" Products in violation of law; enjoining Defendants from

continuing to manufacture, label, market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.  For all injunctive relief pursuant to Cal. Civ. Code § 1780;

E.  For an order awarding attorneys' fees and costs;

F.  For an order awarding punitive damages;

G.  For an order awarding pre-and post-judgment interest; and

H.  For an order providing such further relief as this Court deems proper.

Dated:  February 4, 2015

Respectfully submitted,

By:  /s/ Pierce Gore
Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: 202-789-3960
Facsimile: 202-589-1813
charles@cuneolaw.com

Taylor Asen
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 202-789-3960
Facsimile: 202-589-1813
tasen@cuneolaw.com

Dewitt M. Lovelace
Valerie Lauro Nettles
LOVELACE AND ASSOCIATES, PA
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone:    (850) 837-6020
Facsimile:    (850) 837-4093
dml@lovelacelaw.com

Richard R. Barrett
LAW OFFICE OF RICHARD R. BARRETT, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, Mississippi 38655
Telephone: 662-380-5018
Fax: 866-430-5459
rrb@rrblawfirm.net

Don Barrett
DON BARRETT, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Fax: (662) 834-2628
donbarrettpa@gmail.com

Kenneth R. Shemin
SHEMIN LAW FIRM, PLLC
3333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
Telephone:  (479) 250-4764
Facsimile:  (479) 845-2198

Thomas P. Thrash
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201
Telephone:  (501) 374-1058
Facsimile:  (501) 374-2222

*Attorneys for Plaintiffs*